■ W. EUGENE HEDLEY et al., Respondents, v STATE UNIVERSITY OF NEW YORK et al., Appellants.—In a proceeding pursuant to CPLR article 78 *inter alia* to compel appellants to continue the Department of Education at the State University of New York at Stony Brook, the appeal is (1) from a judgment of the Supreme Court, Suffolk County, entered July 16, 1976, which, *inter alia,* enjoined enforcement of the determination to eliminate the said department, and, (2) as limited by appellants' brief, from so much of a further order of the same court, dated August 27, 1976, as, upon reargument, adhered to the original determination. Appeal from the judgment dismissed as academic. The judgment was superseded by the order made upon reargument. Proceeding remitted to Special Term to hear and report as to whether appellants have complied with the provisions of 8 NYCRR 338.14. Special Term is to file its report with all convenient speed. The appeal from the order dated August 27, 1976 is held in abeyance in the interim. We find amendment of the master plan not to be a prerequisite to the abolition of the Education Department at Stony Brook. However, we hold that the terms of the collective bargaining agreement and 8 NYCRR 338.14 are not in conflict, and remand because the record is insufficient to determine whether appellants have fully complied with the provisions of the latter. Hopkins, Acting P. J., Cohalan and Damiani, JJ., concur; Titone, J., concurs in the dismissal of the appeal from the judgment, but otherwise dissents and votes to reverse the order insofar as appealed from and to dismiss the proceeding, with the following memorandum, in which Shapiro, J., concurs: I agree with the majority's view that the proposed elimination of the program in elementary education and of the Education Department at Stony Brook, because of a reduction in the 1976–1977 State University budget, does not require any prior amendment to the master plan. The thrust of the language contained in sections 237 ("Regents plan for higher education", etc.) and 354 ("Powers and duties of state university trustees-planning functions") of the Education Law clearly evinces that the master planning process for the development and expansion of higher education in the State is authorizing and permissive rather than mandatory and directive. The statutes in question deal primarily with long-range goals and priorities; they do not mandate either that specific educational programs be created under the master plan or that any such programs already in existence be abolished thereunder. It should also be noted that the language of the master plan amendment of 1962, relating to the establishment of the elementary teacher program at Stony Brook, specifically provides that the master plan of 1960 be modified so as to *authorize* Stony Brook "to conduct under-graduate, extension, and in-service programs for the education of elementary school teachers" (emphasis supplied). Furthermore, since the implementation or continuance of any educational program under the

master plan is dependent upon legislative appropriations each fiscal year, it logically follows that budgetary cuts adopted by the Legislature may at times necessitate either the elimination or phasing out of certain educational programs. However, I do not agree with the majority's determination that this proceeding should be remanded for a determination as to whether the Chancellor of the State University, before eliminating the Department of Education at Stony Brook, sought the advice of the State University Faculty Senate in accordance with State regulation (8 NYCRR 338.14). In my opinion, the enactment of a subsequent regulation (8 NYCRR 343.1), entitled **"Applicability"**, together with certain provisions of the collective bargaining agreement entered into by the State and United University Professions, Inc., on June 20, 1974 (arts 5, 35), have rendered 8 NYCRR 338.14 a nullity. Specifically, the collective bargaining agreement entered into on June 20, 1974, for the period July 1, 1974 to June 30, 1976, provides, *inter alia,* as follows: "Article 5 *Changes in Current Policies* § 5.1 The State of New York agrees to effect any changes in current Policies which are in conflict with this Agreement and in the event of any inconsistency or *conflict of Policies or campus by-laws the provisions of this Article shall apply"* (emphasis supplied). *"Article 35.* § 35.1 *Retrenchment* shall be defined as the termination of the employment of any academic or professional employee during any appointment * * * *as a result of financial exigency* * * * or curtailment of one or more programs or functions University-wide or at such level of organization of the University as a campus, *department,* unit, *program or such other level of organization of the University as the Chancellor or his designee deems appropriate* (emphasis supplied). § 35.2 *Consistent with the mission of the level of organization of the University at which retrenchment occurs, the Chancellor or his designee, after such consultation as may, in his judgment, be appropriate, shall apply retrenchment* among employees holding the same or similar positions subject to retrenchment at such level of organization in inverse order of appointment" (emphasis supplied). On October 28, 1974, another rule was filed (8 NYCRR 343.1), effective retroactively to July 1, 1974 (the date on which the two-year collective bargaining agreement went into effect), which provides as follows: **"Section 343.1. Applicability.** The provisions of the policies of the board of trustees, insofar as they apply to employees in negotiating units established pursuant to article 14 of the Civil Service Law, shall be continued, provided, however, that *during periods of time where there is in effect an agreement between the State* and an employee organization reached pursuant to the provisions of said article 14, *the provisions of such agreement* and the provisions of said policies *shall both be applicable.* In the event the provisions of the agreement are different from the provisions of said policies, *the provisions of the agreement shall be controlling"* (emphasis supplied). (It should be noted that 8 NYCRR 338.14, **"Budget or program curtailment"**, and 8 NYCRR 343.1 **"Applicability"**, set forth above, are both contained in the rules of the State University, under subchapter B, entitled **"Policies of the Board of Trustees".**) Thus, when reading the provisions of the collective bargaining agreement *in pari materia* with 8 NYCRR 343.1, we discover that the level of organization at which retrenchment is to be applied is solely a matter of discretion for *"the Chancellor or his designee";* and that such retrenchment is to be applied by the Chancellor *"after such consultation as may, in his judgment, be appropriate"* (art 35 of the collective bargaining agreement [emphasis supplied]); and that where provisions of the agreement conflict or differ from any policies of the board of trustees, the provisions of the agreement shall be applied or shall be controlling (8

NYCRR 343.1; collective bargaining agreement, art 5). Based upon the collective language, I come to the inevitable conclusion that before implementing a policy or program of retrenchment made necessary by legislative budgetary reductions, the Chancellor need no longer "seek the advice of the faculty senate concerning the policy to be followed in the reduction of staff", as set forth in 8 NYCRR 338.14. Simply put, there is no need to remand the proceeding for a hearing as to whether appellants complied with the regulation governing termination for retrenchment. The thrust of 8 NYCRR 338.14 has been vitiated by 8 NYCRR 343.1, and by the terms of the collective bargaining agreement. Accordingly, the proceeding should be dismissed and judgment entered in favor of the appellants.